Judge Marshall
delivered the Opinion of the Court.
This case was formerly before this Court, when it was reversed for want of proper parties; and in the opinion then given, the Court gave directions as to the decree which should be finally rendered, provided the facts of the case should not be materially varied by further preparation, To the opinion then delivered (which will be found in 5 J. J. Marsh. Rep. 603,) reference is made for the principal facts as they then appeared in the record; and also, for the directions then given with regard to future proceedings.
After the return of the case, the administrator of Park was brought before the Court, and the parties filed additional pleadings, and proved additional facts.
Where heirs ard eery, jointly with the -adm’r, and is no successor in llle ad[nin^‘ tration, nor any probability of 4decree1^ gainst the heirs A^ex’on for thé debt bf a deceadm’r^brdy, is asa^d e¿ito his heirs— ^1® sa^® afterwards recd^’^"hav* ing been returned ment^cannot^bf again enforced, tbe^p^renfsal. isfaction has pro-the 'pi’tMn’ the ex'on, or any other who has an equitable right to be substituted in his place {5 J. J. M. 603) is entitled, in equity, to a remedy against the representatives of him for whose debt the land was sold—provided no rebutting equity appears in their favor.
In such case, if the heirs are expressly bound in the contract on which the judgment was recovered, they are separately liable to a decree—not exceeding the assets descended,
Park’s administrator died before the hearing. But upon the suggestion of the complainants, that no further administration had been granted, they were permitted to proceed with the cause; and at the hearing,the same decree was rendered against the heirs alone of Park, which had been directed to be rendered against them jointly with the administrator.
The heirs seek the reversal of this decree, as well on the ground of this apparent defect of parties, as upon the ground that the additional facts now proved, shot# that the complainants are not entitled to the relief which they ask, and that their bill should have been dismissed.
Upon the subject of parties: we are inclined to the opinion, that if the decree could have been properly rendered against the administrator and heirs, it may, upon the same principles, alter the death oi the administrator, and when no successor has been, or probably will be, apy 1 J . y i pointed, be rendered against the heirs alone- The proceeding in either case is anomalous. But the contract On which the original demand arose, is the bond of N. Park, in which he binds his heirs as well as his executors. It is in effect the debt of the heirs, to the extent of assets descended, and might, in the first instance, have been enforced against them separately, at law; and, as a decree against the administrator and heirs would only be sustainable, after the proceedings which have been had at law, on the ground that the Chancellor may and does disregard those proceedings, except so far as to consider, that by interposing a complete bar to the attainment of justice at law', they authorize him to assume jurisdiction of a demand purely legal; and as having thus taken jurisdiction, he goes back upon the original demand, and decrees upon the original liability—we do not perceive why he may not decree upon the separate liability of the heirs, as well as upon the joint liability *554 of the heirs and administrator, especially when theie is no administrator in fact.
A party seeking relief under such eiroumstancesfsM pra,) must show that he has a clear equity. If by his intentional wrong or wilful error, the defendant has obtained a legal advantage, a court of Eq. will not deprive him of it. Nor will the ch’r interfere to deprive a def’t of the protection which the credit- or’s own act has furnished ,ifthere is any reason in equity or good conscience why ■the fab lity may hot beenforeed.
W. gave his daughter and her husband a tract of land, by parol. P. the husband, after occupying the land for a while, sold it, and gave a a bond for a title. His wife died, leaving two children. He mar* ried again, and had two more by the hist wife.— W. then refused to convey tha. land—either to P. or his vendee ; because (hesaid) if he did so, the, 2dwife’s ch ildren would participate, equally with the others, in his gift to his' daughter. P. died, and his vendee brought a suit, and recovered a judg’t a*, gainst his adm’rs, upon the title. bond. W. then, conveys the land to P’s vendee,^ and gets the judg' ment against P’s adm’rs, in lieu of it. An ex’on on that judg’t is. (illegally) levied, on land descended to P’s heirs, whichis sold; the ex’on is returned satisfied, andpos-, session of the land is taken and held under the purchase. W. afterwards becomes he own-, er of that title, and conveys the. land, with warranty, to his son —who is the, guardian of 'his two grand-children . But P’s, heirs finally recover the land— the sheriff’s sale being illegal and void; and W. ist, made liable upon his warranty; <he having died; his achn’rs file a bill to enjoin the judg’t which P’s heirs had recovered for the land, or to make them liable ' for the judg’t (oh the qbligatkmojftheir ancestor; under which the land >vas sold. It also appeared, that W. had repeatedly said, that he acquired the judg’t for his two grand-children', and it also appeared, that, in his will, he had considered the land, or judgment, as an advancement to his daughter.
*554 We repeat, however, that the proceeding, in either shape, is anomalous, and if admissible at all, is only justifiable on the principle of general equity and justice, which forbids that a creditor should be deprived of a just debt, or that the debtor should withhold its payment# because there has been a return of satisfaction upon the execution, when, as subsequent events have proved, there is no actual satisfaction; no real gain to the creditor, and no loss to the debtor, by reason of any thing done on the execution.
But if a creditor would entitle himself to the applica* lion of this principle, and would ask that those extraordinary powers which the Chancellor may exert for the advancement of justice, shall be exercised for his bene* fit, and in order to relieve him from the legal difficulties with which he has surrounded himself, he must present a caso of pure equity. He cannot be entitled to the aid of a Court of Equity to relieve him from the bar which he himself has created, if that bar be the consequence of his own wilful error, or intentional wrong. And certainly the Chancellor will not interpose to deprive the defendant of that protection from liability which the creditor’s own act has furnished, if there be any ground in equity and good conscience, why the liability, supposing it to exist, should not be enforced. A party ought not to be deprived of a legal advantage obtained without any unfairness on his part, unless in favor of an equity which is positive and unequivocal; and the Court, when called on to act upon a principle of mere equity, will scrupulously regard the moral justice of the case.
We proceed, therefore, to enquire whether, in conformity with these principles, and upon the facts of the case as they now appear, the complainants are entitled to any relief against the heirs of N. Park.
The heirs of Park are his four children, by two wives, of whom each was the mother of two of these heirs. The first wife, Peggy Park, was the daughter of John White, of whom the complainants are the personal reprcssntatives. The land which Park sold to Scrivenor, *555 and for the conveyance of which he executed the bond which is the foundation of the liability now sought to be enforced against his heirs, was verbally given by John White, to his daughter, Peggy Park, or to her and her husband, and they lived upon it for some indefinite period. After her death, and Park’s marriage to a second wife, and the birth of children by her, White refused to convey the land to Scrivenor, or to Park, on the avowed ground, that by doing so, the children of Park by his second wife, would have the benefit of his gift of the land to his daughter, as well as his daughter’s children, to which he seemed unwilling to consent. And no conveyance being made, Scrivenor, after the death of Park,, brought his action’ and obtained judgment on the bond, against his administrators alone.
Upon this judgment being obtained, White offered to convey the land to Scrivenor for the judgment, -which he said he wished to acquire for the benefit of his grandchildren, the children of Peggy Park. Scrivenor accordingly received the conveyance, and White, without any formal assignment, became entitled to the judgment against the administrators. And it is this judgment (or the liability on which it is founded,) which, after it has been improperly satisfied by a sale of lands descended to the heirs of Park,' the administrators of White now seek to enforce, upon principles of mere equity, against those very grand-children for whose benefit, and (as, in foro .conscientjas; it may be said) with whose land it was purchased.
In what manner White intended to use the judgment for the benefit of his grand-children, it is scarcely necessary to conjecture; he may have intended, at first, simply to extinguish the demand of Scrivenor, by conveying the land for the non-conveyance of which the judgment had been obtained; or he may afterwards have intended, that the land which was sold under the execution, and which was ultimately conveyed to an individual who was guardian of these children, should be held for their benefit. There is, however, no sufficient proof of this; and he may have considered himself under no obligation to them, in reference to this matter, or he may *556 have determined to disregard it. But he repeatedly declared he intended the judgment for their benefit; and by his will, subsequently made, in which he directs the advancements received by his children to be first equalized, and the remaining estate then to be divided equally among them.—he charges his daughter, Peggy Park, in whose place her children then stood, with one thousand dollars; which, as is clearly proved, neither she nor they had ever received, unless in the gift of the land, or in the supposed or intended gift of the judgment, in lieu of the land. And could he, while in the account made out by himself, between his children and devisees, for the purpose of an equal division of his estate, he was charging Peggy Park, or her heirs, with this land, or the price of it, as a gratuity from himself, conscientiously demand of them the páyment of this judgment, which was in faqtthe price o'f the land?
Held, that, under these cireutnátanceu, the judgment acquired by W. against P’s adm’rs, ought to be considered' as a trust • for the benefit of P’s heirs; and that the eh’r should afford no aid in enforcing it against ■ ■ them— neither against •the grand children of W. nor their co-heirs.
A' parol gift of land, tho’ it cannot be enforced hy1 law, is morally binding; and, tho’thech’rcannot enforce such an obligation, he fnay find in its existence, sufficient reason for t0 en force a merely dof tho donor,
*556 It is not for us to reconcile the repeated professions of White, sanctioned by the statements made in his last will, with the apparently contradictory act of selling under the judgment the land which had descended to these children in common with their co-heirs of Park. The question is—was he, in the eye of morality and good conscience, under an obligation to them, on acr count of the gift of this land? Did he hold the title of the land, and afterwards the judgment, for their benefit?
If White had given his bond to Park, for the conveyance of land, and had afterwards conveyed the same land to Park’s vendee, in consideration of a judgment against Park, for having failed to convey, he might unquestionably have been enjoined from proceeding at law, to enforce the judgment against Park, who might consider the conveyance as made in discharge of White’s obligation to him, and therefore as a purchase of the judgment for his benefit. White would not have been permitted to speculate upon the violation of his own obligation,'by enforcing the judgment, and saying he was liable at law for the breach of his bond. And so if White had given his bond to Peggy Park, or to her children, and had afterwards conveyed to Park’s vendee, in consider *557 ation of a judgment against Park’s administrators and heirs, for a failure to convey, there is as little doubt that the heirs could have enjoined the judgment, on substantially the same grounds. He would in fact, have purchased the judgment with their land; and if they chose t.o sanction the transaction, his conveyance to Park’s vendee, being received in lieu of the damages recovered against them, for the failure of Park to convey, might be considered, by them, as a discharge of White’s obligation to convey to them, and as a satisfaction and ex-tinguishment of the damages to which they had become liable by the non-conveyance of the same land. If he had conveyed to them, in pursuance of his obligation, they might have conveyed to Scrivenor, and saved the damages, or might have paid the damages and kept the land. Pie could not, by committing a violation of hi§ obligation, be ■ entitled to withhold the land from them, and to force them to pay the damages.
The case before the Court defers from that last supposed, only in the fact, that the gift of the land to Mrs, Park, was by parol, instead of being evidenced by a writ ten obligation to convey. But was the gift less binding upon White’s conscience, because it could not be enforced by legal process? Would he have been less guilty of a breach of moral duty in conveying the land to another, because he would not thereby have rendered himself liable to damages at law ? Or would his demand, that they should pay him the price of the land, which he had conve}red to another, be less immoral or unconscientious, because, although he was morally bound to convey it to them, they could not compel him to do so by the decree of a Chancellor? It seems to us, that these questions must all be answered in the negative. A parol gift of land, though not enforcible by law, is not illegal or void. The donor is, in morality and good conscience, under the same duty of respecting it, and perfecting it, if necessary, as if it were in writing. And although this duty will not be enforced by the positive action of the Chancellor, the duty itself, and the equities growing out of it, are recognized by the Court, as existing, and as, binding in conscience, and may, therefore, be sufficient *558 to rebut a demand of the donor inconsistent with them, and which itself rests only upon the ground of its being equitably and conscientiously due.
The facts of the case authorize the conclusion, not only that White was under a conscientious obligation to convey the land to his grand-children, the Parks, but that he felt and acknowledged that obligation, and that he considered himself as discharging it in conveying the land to their father’s vendee, and taking in the judgment, for damages, to which they might be responsible for their father’s failure to convey; and that he actually meant it as an extinguishment of these damages so far as they were concerned and for their benefit. We think, too, that they have a right so to consider it, and that the Chancellor may so consider it, when White or his representatives seek his'aid to enforce the damages against them on purely equitable principles. "In this view of the case, White acquired, in good conscience, no beneficial interest in the judgment, and held it only for the benefit of the two first children of Park. And neither he, nor his representatives, have a right to the aid of the Chancellor in enforcing it, either against them, or against their co-heirs, in opposition to their will. There is certainly no reason operating in favor of the representatives of White, which should induce the Chancellor to make a distinction between the two sets of children who constitute the heirs of Park. - White’s representatives have no more right, in good conscience, to demand payment for themselves, from the two younger than from the two elder heirs. And no more right to demand payment of part, than of the whole judgment. And as those of the heirs for whose benefit the judgment was acquired and held, resist its enforcement against their coheirs, as well as themselves, the Chancellor ought not to attempt (what, indeed it would be difficult to do, consistently with the principles and practice of the Court,) either to split up the subject of the suit, or to act separately upon individuals upon whom a joint responsibility, if any, has devolved.-
We are of opinion, therefore, that the. complainants §re npt entitled to the relief for which they have prayed; *559 nor to any action of the Court for the effectuation of the demand set up against Parle’s heirs, but that this is a case in which they should be left to seek such redress as they may be able to find at law.
The decree is, therefore, reversed, and the cause remanded, with directions to dismiss the bill.